UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LOUIS A. TERMINELLO, MICHAEL MILLER,     **ECF CASE**
PARADISE HOMEOWNERS ASSOCIATION,
HOA OF PIERMONT LANDING, REEDS &     Docket #08 CV 01056 (WCC)
ABBOTTSFORD GATE CONDOMINIUM,
DeVRIES POINT CONDOMINIUM, and     **DECLARATION IN**
PARADISE HARBOR AT PIERMONT LANDING     **OPPOSITION**
CONDOMINIUM,

                                        Plaintiffs,

     -against-

THE VILLAGE OF PIERMONT, NEW YORK
by its BOARD OF TRUSTEES AND TRUSTEES,
and "JOHN AND JANE DOES 1-10,"

                                        Defendants.
-----------------------------------------------------------------x

       **MARY E. BRADY-MARZOLLA**, being duly admitted to practice law in the State of New York hereby affirms under the penalties of perjury as follows:

       1. Your affiant is associated with the law firm of Feerick Lynch MacCartney PLLC attorneys for the Plaintiffs. I am fully familiar with the facts and circumstances of this matter based upon my review of the file maintained by my office.

       2. This declaration is submitted in opposition to Defendants' Motion to Dismiss, pursuant to the Federal Rules of Civil Procedure.

       3. Annexed hereto and labeled as Exhibit "A" is a copy of the Village of Piermont Board Meeting Minutes dated March 28, 2006.

       4. Annexed hereto and labeled as Exhibit "B" is a copy of correspondence dated February 11, 2003 to Plaintiff Louis Terminello from Town of Orangetown Assessor Brian Kenney.

5. Annexed hereto and labeled as Exhibit "C" is a copy of an article from The Uniform Standard dated March 5, 2005.

DATED:   April 15, 2008
         South Nyack, New York

                        Yours, etc.

                        FEERICK LYNCH MacCARTNEY PLLC

                        By: _____
                        Mary E. Brady-Marzolla (MEM 1077)
                        96 South Broadway
                        South Nyack, New York 10960
                        (845) 353-2000

**INCORPORATED VILLAGE OF PIERMONT**
**VILLAGE BOARD MEETING**
March 28, 2006

Present: Mayor Edward Traynor, Fred Devan, Vince O'Brien, Audie Moran, Walter Sevastian, Esq.-Village Attorney, Denise Ehrhart- Village Clerk-Treasurer

Absent – Trustee Joan Gussow

Mayor Traynor called the meeting to order and led everyone in the Pledge of Allegiance.

7:00 p.m. - Workshop with the Homeowners Association of Piermont Landing:

Mayor Traynor advised that the Board is working on providing services to the Landing. In order to provide all services, the streets need to be dedicated to the Village and the consensus was that that was not possible. Our attorney advises that garbage pick up and recyclables may be possible with questions regarding insurance.

Walter Sevastian was asked to look into the services provided to other Village residents. State law prohibits maintaining private roads. He then looked into garbage and recycling – there is case law stating that when pick up is paid for by ad valorum tax it could be offered to all, there is competing case law with respect to private roadways stating that Governments should not traverse over privately owned roads. The Village would need insurance protection provided by the Landing for the Village to go onto private roads for pick up of garbage and recycling.

The Mayor asked how big a problem it could be if the Village went into the Landing. Mr. Sevastian replied that small governments do things that state law may not support but the strict letter of the law is not always challenged, not everything in the law is black & white. The worst case would be if a State Controller Auditor came in they could say stop.

The Mayor asked for Board comments:

Trustee Devan said he has been advocating services for a long time. He has been speaking of a revaluation at fair market value with services. NYCOM said no plowing, etc. but was more lenient on garbage and recycling pick up if the Village was listed as an additional insured.

Trustee O'Brien agrees with Trustee Devan. The Board should ask Al Bartley the cost involved for inclusion in the 2007 Fiscal Budget.

Trustee Moran said she is happy and disheartened to come to this point of garbage and recycling only. As a former resident of the Landing she always wondered why she never received the same services as the rest of the Village but if all we can offer is garbage and recycling it's a start.

Dennis Lynch, an attorney representing the Piermont Landing HOA asked for good faith negotiations with his client before a lawsuit is brought. 60 grievances were filed and all were rejected in unison. This brings a question of perception that the Landing is not given the same rights as the rest of the Village.

Mr. Lynch stated that the reassessment was done for all the wrong reasons possible and the Village needs to attempt to reach a resolution to avoid a lawsuit. He then asked the Village Board to authorize the Village Attorney to enter into negotiations with his clients. The issue here is the approach of the village toward the Landing residents.

Walter Sevastian commented that it never hurts to hear both sides before litigation, after litigation all parties lose.

Pat Lopez said that in order to provide these services to the Landing the Village will need many more trucks, additional salaries and equipment. Will this cost come back to Landing residents in taxes? The Mayor responded that the additional cost for the Highway Department to do this would be spread across the entire Village not just the Landing.

Trustee O'Brien added that garbage and trash tipping fees would be the only substantial addition and the Village was not considering hiring an additional person unless all services were provided including snowplowing.

Trustee Devan added that the area for pick up is the dumpsters or very close to it.

Lee Ostroff – seems we are talking peanuts and the amount of money saved by Landing residents through Village garbage pick up is a small amount. The Landing would still get hurt by taxes if the Village gave all services. All these things we are talking about should have been discussed prior to deciding on the reassessments and the Village should have done their homework to know that 100% approval to dedicate roads would be needed. Half the condos will not be involved in the increased assessments. He stated that this was a railroad and we will end up in court because the Village did not get the details first and then made a decision. He said the Village said they would provide equal services to the extent of the law. 80-90% of towns use a different method of assessment and there must be a reason.

Trustee O'Brien replied that the Village said that after the reassessment we would discuss services. The reassessment was done to put everyone on a fair playing field at full market value.

Trustee Moran stated there should be one correction to the previous comments because the Village did not know about the 100% resident vote to dedicate the streets. Mr. Ostroff said he stated that the Village should have known.

Lou Terminello advised the Board that it would take 227 people needed to change the bylaws.

The Village Attorney said that if in fact there was a feeling that the roads could be dedicated there would be a way to do it. The assessment was not changed with the temptation to provide services. The income approach and fair market value for all residents to be on the same playing field was the decision the Board had to make. The Village's total assessment number going down was not correct to the Board. The Village intends to keep the assessments at 100% by adjusting them every year. This was not a punitive action by this Board. Market value was very high and assessments were very low.

Trustee O'Brien said that all properties were revalued at a higher number and many properties throughout the Village are seeing tax increases not just Landing. Everyone was treated equally.

Trustee Devan said that a week ago the Department of Real Property Services approved the 100% equalization rate and the legal steps the Village took to go homestead. Lawrence Park and Roundtree were apartments prior to 1983, changed to condos and by law had to stay at non-homestead.

Joe Member asked what a level playing field is. His grievance was a very large package including every sale in Piermont and he is now 150% of what he paid for his unit. He asked why the Village could enter roads for garbage and not other services. The Village can get insurance from the Landing for everything. The Village Attorney replied that maintaining private property is a different matter in the law. The Board suggested that Mr. Member contact the Assessor on this again.

Mark Silverstein said that at the last meeting to discuss reassessments the Board assured everyone that when it was over they would work on services to make it fair. He pays taxes and gets a lot for it. He said he loves Piermont and the Board is doing a lot of things right.

Gene Auerbacher asked that if a grievance was denied and the Assessor is approached, his back would go up from the challenge. He asked why wouldn't one of the Board meet with the assessor with Joe's package and not leave it to Joe and the Assessor alone.

Trustee Devan said that is an excellent point and if Joe gets a professional appraisal he will go with him. Mr. Member said he recently purchased his unit and that should be good enough. Trustee Devan stated that appraisers have special training.

Trustee O'Brien said to Mr. Auerbacher said that the Board has done a lot of work and modified assessments as appropriate.

Jerry Haber commented that with the legal resources the Board has it should not have made the mistake with the grandfathering of the two condo complexes. The Attorney replied that the state never indicated to the Village in the beginning that these properties were exempt. It is not an excuse but the assessments were corrected when we found out.

Trustee O'Brien said that even if the Board knew it would still have gone forward with the revaluation for the rest of the Village of Piermont.

Trustee Devan added that the non-homestead rate will be higher than the homestead rate.

A resident stated that grievances have been met with defensiveness. He just received a change from grievance on 1 property but does not know about the other 2. He then asked if it was too much to ask that when we put time in to file a grievance, shouldn't we get an answer one way or another? Trustee Devan said he will discuss this with Brian to try to rectify things.

- 4 -

Mike Miller reminded the Board that he wants to make it perfectly clear that the Landing will not and cannot dedicate the roads.

Walter Sevastian and Dennis Lynch will meet. Walter will contact the HOA, Harbor Cove and Phil Griffin to see if residents are interested in garbage & recycling and to work out insurance.

The Mayor thanked everyone for coming.

At 8:00 p.m. the regular Board meeting commenced.

Public Comment:

Ray Icobelli, Lions Club of Blauvelt, requested to hold the Apple Festival for Sunday, September 10, 2006 from 12 noon to 6 p.m. in Flywheel Park. It is a fundraiser and he will get a letter from Phil Griffin and will advise the Police and the DPW. He will produce an insurance certificate to the Village.

Motion to approve by Trustee O'Brien and seconded by Trustee Moran. Upon vote the motion carried.

Sally Savage asked the Village to chop off the corner of her property for the sake of large trucks. Her trees are being killed by salt and her new wall is cracking. She needs to give the village a piece of her property and needs to work something out in exchange, if not money since this should not cost her anything for a lawyer or an engineer.

The Village Attorney said the Village needs a survey of her property and that an engineer can do a metes and bounds description at the Village's expense and he will make up an easement for signature. Al Bartley said that the Highway Dept. can do the work.

Andrew Wiley advised that the veteran exemption for the maximum amount was passed in Orangetown and that the Village should look into this as well.

Public Hearing – Cablevision Franchise renewal: The Attorney advised that the Village has a Franchise agreement up for renewal though another company may come in for a franchise as well. There is a form resolution included in the packets that must be passed.

Trustee O'Brien moved to open the Public Hearing. The motion was seconded by Trustee Moran. Upon vote the Public Hearing was opened.

Trustee Devan asked what the franchise fee is and the Attorney replied that 5% of the gross receipts is the maximum allowable by law.

Motion to close the Public Hearing by Trustee Moran and seconded by Trustee O'Brien. Upon vote the Public Hearing was closed.

Motion to approve the Franchise renewal by Trustee O'Brien and seconded by Trustee Moran. Upon vote the motion carried.

Case 7:08-cv-01056-WCC   Document 6-2   Filed 04/15/2008   Page 5 of 7

The Mayor moved the Agenda to #5 – request for a special permit for the Tappan Zee Marina. Kevin Conway asked for the special permit to change the bulk head and travel lift.

Trustee O'Brien stated that there is a significant history with this application. There are fees to be paid before a special permit is issued. The Building Inspector also wants a sight visit with Attorney Conway.

A motion by Trustee O'Brien to approve Special Permit contingent on payment of fees due and a meeting with the Building Inspector and Kevin Conway at the sight was seconded by Trustee Devan. Upon vote the Special Permit was granted on condition.

829 Piermont Avenue – continue discussion on request for change of use. Trustee O'Brien said a memo from John Angelis, Building Inspector, indicated that per the code approval of the application is not recommended because he feels it would pose a significant impact on this property and the surrounding area, but if the Board disagrees it must be referred to the Planning and Zoning Boards for public comment from all neighbors. Mr. Vella would need variance from Chapter 210-8.

Mr. Vella stated that a significant impact determination requires a study and he objects. He claims it has been used as it is since 1994 with no complaints on any impact on the neighborhood.

Trustee O'Brien stated that the Building Inspector's recommendation is to refer the application to the Planning & Zoning Boards for neighbors to be put on record, the Planning Board for a change of use and Zoning for a variance. If Mr. Vella wants to pursue this application, that would be the next step.

Resolution for Special Permit change of use from a boat house to dwelling unit moved by Trustee O'Brien and seconded by Trustee Moran:

- The applicant appeared before the Village Board to request a change of use in the WF-1 Zoning District to convert a boathouse to a dwelling unit,
- the Village Board directed that the applicant be referred to the Planning Board to present a site plan, and also to the Zoning Board to present an application for a variance from Code Section 210-8 to permit a second principal dwelling unit on a single lot,
- the Village Board recommended that the Planning and Zoning Boards process the application, and if such Boards see fit to approve the site plan and variance request, to do so with the condition that the applicant return to the Village Board for final approval of the application.

Upon vote the motion carried. The Village Clerk will speak with the Building Inspector on this matter.

Resolution to accept the Performance Bond with reference to the Burck Subdivision, in its current form in amount of $112,228.60 as to form, sufficiency, manner of execution and surety moved by Trustee O'Brien and seconded by Trustee Devan. Upon vote the motion carried.

The original Performance Bond to be maintained by the Village Clerk.

Al Bartley's request for budget transfers were reviewed and so moved by Trustee Devan and seconded by Trustee Moran. Upon vote the motion carried.

Al Bartley:
Rt. 9W will be closed all week (4/3/06 – 4/7/06) to replace drainage culvert.

5 towns and 10 Villages in the county would like to form a Storm Water Consortium of Rockland County to apply for grants – motion to authorize the Mayor to sign the intent to join made by Trustee O'Brien and seconded by Trustee Devan. Upon vote the motion carried.

Motion by Trustee O'Brien to set a Public Hearing on the 2007 Budget for April 11, 2006 @8:15 was seconded by Trustee Devan. Upon vote the motion carried.

A motion by Trustee Devan to submit a Grant for a vacuum truck for the cleaning of catch basins and outflow valves was seconded by Trustee O'Brien. Upon vote the motion carried.

A motion was made by Trustee Devan to expand the NO PARKING area across from the Fire House by an additional 15' on each side was seconded by Trustee O'Brien. Upon vote the motion carried.

A motion by Trustee Devan to approve the Emerald Society 5K run/walk on May 7, 2006 was seconded by Trustee O'Brien. Upon vote the motion carried.

Budget workshops were scheduled for – Thursday, March 30, 2006 from 7:30 p.m. to 9:30 pm and Tuesday, April 4, 2006 from 6:00 p.m. to 7:30 pm.

A motion by Trustee Devan to approve the Warrant in the amount of $157,508.39 was seconded by Trustee Moran. Upon vote the warrant was approved.

A motion was made by Trustee Devan to enter Executive Session to discuss pending litigation. The motion was seconded by Trustee O'Brien. Upon vote the motion carried.

A motion was made by Trustee O'Brien and seconded by Trustee Moran to exit Executive Session. Upon vote the motion carried.

Motion to adjourn by Trustee Devan and seconded by Trustee O'Brien. Upon vote the meeting adjourned.

# TOWN OF ORANGETOWN

### ASSESSOR'S OFFICE
Town Hall • Orangeburg, N.Y. 10962



BRIAN J. KENNEY IAO
Assessor

Telephone
(845) 359-5100
Fax (845) 359-5114

By Fax

Mr. Lou Terminello  
Board of Management  
Paradise Harbor Condominium  
Piermont, New York 10968

February 11, 2003

Re:   "Building 28" - 2003 Town Assessment Roll

Mr. Terminello

As previously discussed, this is to inform you that I am proposing that the overall assessments on the individual condominium units in the above property located in the Village of Piermont, NY be adjusted to reflect better equity with other Village properties for the upcoming assessment roll. This adjustment will apply to units 51 through 318 inclusive, 4 407 and will result in an assessment reduction of 7%, to be effective for the 2004 Town tax amount in January next and the 2003 School tax amount to be billed in September of this year.

Please note that this will not affect the Village of Piermont or the County assessments on these units as their valuation is already restricted by law (NYS Real Property 339-y) to valuations based not on market but on income. (Please note the differences in valuations on your tax bills).

As discussed, I would appreciate an affirmation from the Board of Management to this proposed adjustment in the name of all the included property owners to be submitted to me in writing. Although individual owners retain the right to challenge assessments at Grievance Day, I reserve the right to withdraw any proposed assessment change for any and all units should this not be accepted by the property owners of the above cited units.

Brian Kenney

# THE UNIFORM STANDARD

Monthly updates and news for the assessment community from the NYS Office of Real Property Services — March 2005

## Municipalities suffering growing pains with spread of condominiums

ORPS staff had numerous sessions with county directors and assessors at the recent conferences of the Association of Towns and Association of Counties. One subject inevitably leading to more animated discussions concerned the laws currently on the books that grant substantial assessment preferences to condominiums.

The preferences are so great (often in the 40-50% range, sometimes greater), that new residential developments are being organized as condominiums for the sole purpose of realizing these hidden tax breaks. While the incidence of this inequity was originally confined to the downstate area (particularly New York City and Westchester County), the inequities are spreading as awareness of this loophole grows.

Say the word condominium, and some people envision beachfront apartments in Florida or a Manhattan high-rise. In fact, condominiums are not a type of property. Rather, condominium denotes a type of ownership.

However, municipalities in general, and assessors in particular, are experiencing their own growing pains as more and more developments pop up across the state. (See map on Page 2.)

The historical legal issue with this form of ownership is not so much who owns the apartment, but who owns the hallway. In fact, many condominiums are not contained in apartment buildings, but can be duplexes, town homes, and even separate one-family homes in a condominium development. The owners of a condominium receive, when they purchase their properties, interests in that part of the condominium complex not taken up by other units - hallways, elevators, yards, play areas, parking lots, etc.

> *Municipalities and assessors are experiencing growing pains as more and more condo developments pop up across the state*

These are referred to as common areas and the interests are the unit's common interest.

In 1964, New York adopted Article 9-B of the Real Property Law, the Condominium Act.

Section 339-y of the Condominium Act requires that each condominium unit, together with its common interest, be assessed as one parcel, and provides that the sum of the assessments of all the units cannot exceed the valuation that the condominium as a whole would have if it were assessed as a single parcel.

Thus, section 339-y places a ceiling on the aggregate value of the assessments of the units and requires assessors to value a condominium complex as a single entity to determine that ceiling. This ceiling provides a built-in assessment cap, if you will, for all condominiums, which means they are receiving what amounts to an exemption for merely having a particular style of ownership.

The only statutory relief for municipalities in the assessment constraints of RPL section 339-7, as well as the related section 581 of the Real Property Tax Law, is found in Article 19 of the RPTL. If an approved assessing unit adopts the homestead base proportion for levy of taxes by a dual (i.e., homestead and non-homestead) tax rate, condominiums are included in the homestead class but the assessment limitations of sections RPL, 339-y and RPTL, 581 do not apply.

As previously stated, the condo issue has spread from its downstate genesis all the way to Erie County. Amherst assessor Harry Williams has been arguing for years that someone who buys a home for $200,000 should not be able to get it assessed at a frac-

**Continued on Page 2**



## Condos
*Continued from Page 1*

tion of its market value. Last year, Assemblyman Richard Smith of Hamburg joined Assessor Williams in trying to end the tax break for single-family condos.

Assemblyman Smith introduced legislation that would change the law by allowing communities to assess all condominiums at full market value, taking direct aim at "patio homes" and other low-rise condos that are designed to look like single-family homes. The bill would allow high-rise condos - where he says the higher market-based assessments and lack of tax break are more likely to be an added burden on the residents - to remain under the current income approach and assessment ceiling provisions of RPL section 339-y and RPTL section 581.

Amherst is not the only western New York community claiming condo growing pains. The City and Town of Lockport and the Town of Hamburg also have expressed their displeasure with the assessment constraints.

Last month, Senator Elizabeth Little of Queensbury and Assemblyman Brian McLaughlin of Queens co-introduced bills in their respective houses that provide that the assessment of all units in condominiums and cooperatives of three or fewer stories may exceed the total valuation of the condominium or cooperative.

Back in Westchester County, the "condo effect" is addressed more frequently, particularly as more and more developers present their plans and impact studies to local planning boards for new projects seeking classification as condominium properties. The Ossining Town Planning Board has enlisted the assistance of town assessor Josette Polzella in helping them gather information necessary to make an informed decision on property development.

Ms. Polzella gives the developer and the planning board assessment and tax impact analyses on the potential project in both condo and non-condo form. "This way," she said, "the likely differences in the assessments are known to the town before the decision is made."

## A Communication "Best Practice"
# Helping the media understand the bottom line

*Editor's Note: Last month, Essex County Director of Real Property Tax Services Barry Miller decided to inform the informers. For years he had been reading newspaper articles describing town and school budget decisions that did not give a true explanation of the bottom line effect of budget votes -- how will property owners' tax bills be affected by these votes?*

*He made a call to the Plattsburgh Press-Republican newspaper, which services Essex, Clinton, and Franklin counties, and asked to meet with the newspaper's reporters and editorial board. Director Miller's 90-minute presentation and Q&A session on comparison of tax levies versus tax rates proved an eye-opener to the newspaper staff. "I've had an epiphany," P-R Managing Editor Bob Grady laughingly told Director Miller after the meeting.*

*While "epiphany" might be a stretch, Mr. Grady was moved to pen an editorial a short time later to help explain Mr. Miller's message to the newspaper's readers. Perhaps other property tax administration professionals might follow Barry's lead and share this editorial with their news gatherers.*

### Plattsburgh *Press-Republican* Editorial
### The tax levy is true indicator

For years, the Press-Republican has been reporting on budgets of local taxing jurisdictions by focusing primarily – not exclusively – on tax rates, when we should have been putting more emphasis on tax levies.

This was pointed out to us by Barry Miller, the director of real property tax services in Essex County. He gave a presentation last week to a group of our reporters and editors. It's not that we didn't report tax levies. We did, of course. But we didn't put the weight on them that they deserved. Taxpayers would be wise to bear in mind the concepts Miller stressed, as well.

This newspaper – and most others, we would imagine – have tended to concentrate on comparing tax rates from year to year within a taxing jurisdiction. Those taxing jurisdictions would include a county, a city, a town, a village and a school district.

When any of those taxing entities – a town, let's say – prepare their annual budgets, they must first decide how much money they need to spend. Then, they subtract the amount of money coming in from non-local-tax sources – from state aid and sales tax, for example.

What is left after all those sources are exhausted is the tax levy. That is the amount of money the town will have to raise from the property tax.

The town will then compute how much taxable property it has. The sum of the value of all of that property is the tax base. The town divides the tax levy by the tax base to come up with a tax rate, which is expressed in dollars and cents per $1,000 of value.

If, for example, you own a $100,000 home and the tax rate is $5 per $1,000 of assessed value, your tax bill will be $500.

If, the next year, your tax rate goes down to $4 per $1,000 of assessed value, you might be seduced into thinking you just saved $100. Actually, that isn't necessarily so. Historically, however, that is where the heaviest emphasis in reporting went – comparing tax rates from year to year.

The reason that is not reliable is that so many components of the tax rate change imperceptibly each year. For example, the total taxable value in the town – the tax base – is a factor. So is the value of your own property.

The one consistently reliable factor in determining whether you pay more or less in taxes is the town's tax levy. If the levy – the amount to be raised by taxes – goes up 10 percent, chances are good that so will your own tax bill, which is what you really care about.

All other factors can change and your tax bill will not be influenced much. But change the levy, and your tax bill will certainly change with it.

So the Press-Republican will continue to report on tax rates and changes in value as reflected by assessments. But we will pay closest attention to the tax levy, as that is what will determine whether you pay more or less in tax.

When the politicians putting together the budget tell you they have raised the tax rate only 4 percent, as Clinton County did for this year, check the tax levy. It went up almost 11 percent. That is the figure you care about.

And so do we, and so should you.

# High school students' class project persuades town to OK reassessment

How does that old saying go? "From the mouths of babes...?"

Grade 12 "Participation in Government" teacher Karen Ryder has taught a special Public Affairs 101 course, in conjunction with Syracuse University, at Schalmont High School in Rotterdam, Schenectady County for the past several years.

The course requires a class to research and complete a community service public affairs project for three credit-hours from SU.

Mrs. Ryder had been in contact with Rotterdam Town Supervisor John Paolino, who expressed his interest in developing community support for a reassessment. Rotterdam had not conducted a town-wide reassessment in well over 50 years. Such support would be difficult to garner. Reports indicate that most of the board members had been elected on an anti-reassessment platform.

Her class got to work compiling as much information as they could on everything from assessment basics to municipal history of certiorari results. The students scoured journals, newspapers, and websites (they report that they particularly liked the ORPS website). They also interviewed property owners and public officials.

Upon gathering all this information, the students agreed that Rotterdam was in need of a reassessment. How, then, could they create policy to help sell that idea to the town board?

The plan of attack used to help persuade the board was based on demonstrating that Rotterdam was cultivating a system of unfair taxation.

On February 9, the students came to the Town Board meeting to deliver a series of materials designed to inform the public and convince residents that reassessment is the right decision.

They offered informational pamphlets and introduced a website called "Bringing You the Facts on Rotterdam's Reassessment," at:
       www.geocities.com/rotterdamassess

They also presented the results of their research in a PowerPoint presentation, and asked the board to put their presentation on the town website.

The students said, "Look at this. If you know about this, but do nothing about it, then you're the problem." Business properties, including some larger ones owned by General Electric and Niagara Mohawk, were filing assessment grievances against town assessments and winning. The argument the students presented showed that these certiorari decisions were shifting more and more tax burden on the residential class of property in Rotterdam.

Councilman John Mertz told the Schenectady Daily Gazette that he is in favor of solving the tax inequity issue, as delineated by the students, saying the problem is the town's fault and the town must fix it.

"This is constantly viewed as the neighbor next door isn't paying her fair share and it's her fault," he said. "It's not their fault - it's the town's fault."

Councilwoman Holly Vellano said, "I hope our residents view this over the next week or two. This pamphlet in particular is very informative."

The Rotterdam Town Board ended up voting unanimously for reassessment - its first-ever unanimous vote on a reassessment issue, according to the Gazette.

According to Mrs. Ryder, her students not only were successful in convincing the board to greenlight a reassessment, but Syracuse University was "thrilled to death" with their results as well.

---

**THE UNIFORM STANDARD**
Volume 5, Issue 4

The Uniform Standard
is published by the
NYS Office of Real Property Services
16 Sheridan Avenue
Albany, New York 12210-2714
www.orps.state.ny.us

George E. Pataki,
Governor of the
State of New York

Thomas G. Griffen          Joseph A. Hersh
Executive Director         Newsletter Editor