UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LOUIS A. TERMINELLO, MICHAEL MILLER,
PARADISE HOMEOWNERS ASSOCIATION,
HOA OF PIERMONT LANDING, REEDS &
ABBOTTSFORD GATE CONDOMINIUM,
DeVRIES POINT CONDOMINIUM, and
PARADISE HARBOR AT PIERMONT LANDING
CONDOMINIUM,

**ECF CASE**

Docket No.:
08 CV 01056 (WCC)

                  Plaintiffs,

-against-

THE VILLAGE OF PIERMONT, NEW YORK
by its BOARD OF TRUSTEES AND TRUSTEES,
and "JOHN AND JANE DOES 1-10",

                  Defendants.

-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Respectfully submitted,

FEERICK LYNCH MacCARTNEY, PLLC
Attorneys for Plaintiffs
Office and Post Office Address
96 South Broadway
Post Office Box 612
South Nyack, New York 10960
Tel: (845) 353-2000
Fax: (845) 353-2789

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................... 1

STATEMENT OF THE FACTS .................................................................. 1

    A.    BACKGROUND ...................................................................... 1

    B.    PLAINTIFFS' CONCERN ABOUT EXCESS
           REAL ESTATE TAXES ON CONDOMINIUM
           OWNERS IN THE DEFENDANT VILLAGE ............................................ 2

    C.    DEFENDANTS' POLICY TO COMPEL PLAINTIFFS
           TO PAY FOR BASIC MUNICIPAL SERVICES THAT
           PLAINTIFFS DO NOT RECEIVE IS ILLEGAL ...................................... 6

ARGUMENT ......................................................................................... 8

    I.    STANDARD OF REVIEW ............................................................ 8

    II.    DEFENDANT'S POLICY OF SELECTIVELY
          PROVIDING BASIC MUNICIPAL SERVICES
          VIOLATES THE EQUAL PROTECTION CLAUSES
          OF THE FEDERAL AND STATE CONSTITUTIONS ................................ 9

    III.    REAL PROPERTY TAX LAW 1903 AND THE
          DEFENDANT'S LOCAL LAW NO. 7 OF 2005 VIOLATE
          THE EQUAL PROTECTION CLAUSES OF THE FEDERAL
          AND STATE CONSTITUTIONS AS APPLIED ...................................... 12

    IV.    DEFENDANTS VIOLATED PLAINTIFF CONDOMINIUM
          OWNERS' DUE PROCESS RIGHTS .............................................. 15

    V.    DEFENDANTS RETALIATED AGAINST PLAINTIFFS
          IN VIOLATION OF THEIR FIRST AMENDMENT RIGHTS ...................... 18

    VI.    DEFENDANTS CONSPIRED TO VIOLATE PLAINTIFFS'
          CONSTITUTIONAL RIGHTS ...................................................... 23

    VII.    SUFFICIENT ALLEGATIONS EXIST TO SUPPORT A
          *MONELL* CLAIM .................................................................. 24

CONCLUSION ..................................................................................... 25

i

## TABLE OF AUTHORITIES

Page

*Cases*

423 South Salina Street, Inc. v. City of Syracuse,
68 N.Y.2d 474, 484, 510 N.Y.S.2d 507 (1986) .......................................................... 15

Allegheny Pittsburgh Coal v. Webster County,
488 U.S. 336 (1989) .......................................................................................... 20

Applebaum v. Town of Oyster Bay,
81 N.Y.2d 733, 593 N.Y.S.2d 765 (1992) ........................................................ 10-11

Balaber-Strauss v. Town/Vill. of Harrison,
405 F.Supp.2d 427, 433 (S.D.N.Y. 2005) .......................................................... 21

Bordenkircher v. Hayes,
434 U.S. 357 (1978) .......................................................................................... 16

Charles W. v. Maul,
214 F.3d 350 (2d Cir. 2000) .............................................................................. 24

Ciambriello v. County of Nassau,
292 F.3d 307, 324-25 (2d Cir. 2002) ................................................................ 23

Cleburne v. Cleburne Living Ctr.,
473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ............................... 9

Conley v. Gibson,
355 U.S. 41, 45-46 (1957) ................................................................................... 8

Connell v. Signoracci,
153 F.3d 74, 79 (2d Cir. 1998) .......................................................................... 18

Corvetti v. Town of Lake Pleasant,
227 A.D.2d 821, 642 N.Y.S.2d 420 (3d Dep't 1996) ........................................ 15

Curley v. Village of Suffern,
268 F.3d 65, 73 (2d Cir. 2001) .......................................................................... 18

Estate of Morris v. Dapolito,
297 F.Supp.2d 680, 693-94 (S.D.N.Y. 2004) ............................................... 21, 22

Foss v. City of Rochester,
65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985) ................................................ 12, 13, 14

Goldman v. Fay,
    8 Misc.3d 959, 797 N.Y.S.2d 731 (N.Y.City Civ. Ct. 2005) ........................11

Jackson v. New York State,
    381 F. Supp.2d 80, 89 (2005) ...............................................18, 19, 20, 21, 23

Johnson v. Smith,
    297 N.Y. 165, 170, 77 N.E.2d 386 ..............................................................12

Juleah Co. v. Incorporated Village of Roslyn,
    56 A.D.2d 483, 392 N.Y.S.2d 926 (N.Y. App. Div. 1977) ...........................10

Landmark Colony at Oyster Bay Homeowners' Assn. v. Town of Oyster Bay,
    145 A.D.2d 542, 536 N.Y.S.2d 96 ...............................................................11

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ........................24

Leeds v. Meltz,
    85 F.3d 51, 53 (2d Cir. 1996) .........................................................................8

Markim v. Town of Orangetown,
    9 Misc. 3d. 1115(A), 2005 WL 2428359 (Rockland Co. Sup. Ct. 2005) .......20

Matter of Krugman v. Board of Assessors,
    141 A.D.2d 175 (2d Dep't 1988) ..................................................................20

Monell v. New York City Dep't of Social Services,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ...................................24

Mullane v. Central Hanover Trust Co.,
    339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 ...................................................16

Nordlinger v. Hahn,
    505 U.S. 1 (1992) ..........................................................................................20

Pangburn v. Culbertson,
    200 F.3d 65, 72 (2d Cir. 1999) .....................................................................23

People ex rel. Hatch v. Reardon,
    184 N.Y. 431, 445 ........................................................................................12

Resnick v. Town of Canaan
    38 A.D.3d 949, 832 N.Y.S.2d 102 (3d Dep't 2007) ....................................15

Royal Amer. Corp. v. City of Euclid
    (No. 34018, Aug. 21, 1975, cert. den. 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210) ....10

Towne House Village Condominium v. Assessor of Town of Islip,
    200 A.D.2d 749, 607 N.Y.S.2d 87 (2d Dep't 1994) ........................................................19-20

United States v. Goodwin,
    457 U.S. 368, 372 (1982) ................................................................................................16

Verga v. Town of Clarkstown,
    137 A.D.2d 809, 525 N.Y.S.2d 272 (1988) ................................................................13, 14

Villager Pond, Inc. v. Town of Darien,
    56 F.3d 375, 378 (2d Cir. 1995) ........................................................................................8

W.T. Grant Co. v. Srogi,
    52 N.Y.2d 496, 518, 438 N.Y.S.2d 761, 420 N.E.2d 953 ................................................15

Young v. Town of Bedford,
    9 Misc.3d 1107(A), 2005 WL 2230399 (Westchester Co. Sup. Ct. 2005) ........................20

*Statutes*

42 U.S.C. § 1983 ....................................................................................................15, 23, 24

Fed. R. Civ. P. 12(b)(6) ....................................................................................................8

Fed. R. Civ. P. 8 ................................................................................................................8

Fed. R. Civ.P. 8(a)(2) ........................................................................................................8

*Other Authorities*

New York State Constitution Article I, §1 ............................................................................1

Real Property Tax Law § 339-y ................................................................................13, 20

Real Property Tax Law § 511 ............................................................................................16

Real Property Tax Law § 581 ................................................................................13, 20

Real Property Tax Law § 1903 ..........................................................................................16

U.S. Const. Amend XIV, § 1 ............................................................................................9

PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted by Plaintiffs in opposition to Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action. For the reasons set forth herein, Defendant's Motion should be denied in its entirety.

STATEMENT OF THE FACTS

A.    BACKGROUND

Plaintiffs are residents and representatives of condominium and townhouse owners as well as associational entities in the Village of Piermont, New York ("Village"), seeking relief from retaliatory real property assessment action and a discriminatory real property taxation process which has selectively, unequally and unconstitutionally treated Plaintiffs as second-class citizens.    More particularly, Plaintiff condominium owners and entities ("Plaintiffs") were punished because they sought to reduce their taxes.  Plaintiffs are also being taxed for basic municipal services which they do not receive and have been subject to a punitive, selective and improper change in the method of assessment without proper notice.

In addition to Plaintiff Terminello being a resident in the Village for several years, Mr. Terminello began in 2004 to become interested in Republican politics in this small Village.  This Court should know that the Village political structure has strongly favored Democrats for many years.  In fact, the ratio of Democrats to Republicans in this Village is at least 3 to 1.  So, being a Republican candidate in this small Democratic Village literally put a target on Plaintiff Terminello's back.

After becoming involved in Republican political matters in the Village in 2004, Plaintiff Terminello soon became interested in running for Mayor, the Chief Executive Officer's position

1

in this Village. This interest only made the proverbial target on Plaintiff Terminello's back much bigger. In addition to deciding to run as Republican for the position of Mayor in the Village, Plaintiff Terminello also was the President of the Piermont Landing HOA where he resided. Plaintiff Terminello was the effective leader of a significant group of voters in the Village.

B.    PLAINTIFFS' CONCERN ABOUT EXCESS REAL ESTATE TAXES ON CONDOMINIUM OWNERS IN THE DEFENDANT VILLAGE

Although involved with Republican politics in the Village, Plaintiff Terminello still found time to exercise the right to petition for a redress of grievances concerning real estate taxes on his condominium unit and on behalf of other eighty-two (82) other condominium owners because of real estate taxes that were excessive. Prior to July 16, 2004, tax grievance litigation had been filed in Court to challenge improper assessments of 83 condominium units in the Village where Plaintiffs resided. Plaintiff Terminello was the "point person" in that effort. Little did Mr. Terminello know that the powerful political forces he was confronting were now "pointing" at him and those condominium owners he represented.

Prior to and in 2004, condominiums in the Village were assessed using the "income approach" method, as opposed to the "sales comparison" method. The assessments were thus purportedly assessed by what income they could generate as rentals. However, in 2001, the Village agreed Plaintiffs were over assessed by no less than 14% and reduced Plaintiffs assessments for 2001. See, Terminello Affidavit, Exhibit "C". In 2003, the Assessor again agreed to reduce Plaintiffs' assessments by 7% for the 2004 Town tax and the 2003 School Tax to reflect better equity with other Village properties. See, Terminello Affidavit, Exhibit "D".

In 2004, Scott Shedler, a local real estate expert, provided Plaintiffs with his Report and professional opinion that Plaintiffs were still being over assessed under the "income approach" by almost 62% (and upon settling the tax grievance litigation in 2008, the Village years later

agrees that Plaintiffs were over assessed by 40%). <u>See</u>, Terminello Affidavit, at ¶10. This·
discovery prompted the Plaintiffs to commence the 2004 tax grievance litigation in the proper
discharge of their fiduciary obligations to other condominium owners. That litigation challenged
the excessive assessments.

As part of that tax challenge litigation on behalf of all 83 condominiums, eventually on
July 16, 2004 a meeting was conducted with Plaintiff Terminello, Eric Gess, Esq. (who was the
Plaintiff's condominium attorney in that tax grievance litigation process) as well as the Village
Attorney and the Assessor consultant for the Village, Brian Kenney. Also present was Scott
Shedler who had prepared for Plaintiffs a Report showing the Plaintiffs' 83 condominium units
had been excessively valued by the Village. At that July 2004 meeting, Brian Kenney did not
disagree with that Report.

Instead, at that meeting the Assessor consultant for the Village, Brian Kenney, made it
very clear to Plaintiff Terminello and his attorney Mr. Gess (as well as all others present) that
unless Plaintiff Terminello dropped the pending 83 tax grievance litigation that the Village
would act in a punitive fashion against Plaintiff Terminello and all condominium owners by
changing the method of taxing condominiums in the Village. Mr. Kenney told Plaintiff
Terminello that if he didn't drop the Court proceeding it "would be on my (Plaintiff Terminello)
head." The Village's Assessor Consultant told Plaintiff Terminello that he may "be victorious in
the short run, but in the long run you will be responsible for higher taxes on all condominiums in
the Village." Finally, Mr. Kenney told Plaintiff Terminello as part of that punitive municipal
action, "the Village is prepared to change the way they assess condominiums in the future." In
July 2004 and prior thereto, condominiums in the Village were assessed using the "income
approach" method—not the alternative "sales comparison" method. (<u>See</u> <u>also</u>, Terminello

3

Affidavit, Exhibit "D" – Letter from Brian Kenney to Plaintiff Terminello dated February 11, 2003).

At that July 2004 meeting, Mr. Kenney said in closing "I want you (Plaintiff Terminello) to go back to your Board and tell them exactly what I said." Village Assessor Consultant Kenney with Mr. Terminello's threats clearly sought to interfere with the Plaintiffs' civil rights to seek redress of tax grievances. As Brian Kenney, the Village Assessor Consultant, admits in his Affidavit to this Court (which confirms the retaliation) in a Memo dated September 30, 2004, Mr. Kenney recommended to the Defendant Village Tax Assessment "options" which were later confirmed to include changing the method of valuating condominium units from the existing "income approach" to the "sales approach". (See, Defendant's Motion to Dismiss, at Exhibit "D").

That change in tax assessments method resulted in a substantial increase in real estate taxes to many condominium owners in the Village. Plaintiff Terminello's condominium assessment alone went up 87% as a result of this retaliatory change in valuing condominiums in the Village. This change in the method (as recommended by the Village Assessor Consultant) of valuating condominium units in the Village from an income approach to a sales comparison approach was through the enactments under Article 19 of the Real Property Tax Law of New York State that took months to implement. (See, Defendant's Motion to Dismiss, at Exhibit "D").

On May 8, 2005 a meeting was conducted at the office of the Village Attorney for the Defendants. Present were the Village Mayor and Deputy Mayor along with Plaintiff Terminello, his tax assessment attorney, Mr. Gess as well as representative appraisal experts for Plaintiffs. The meeting was called by Plaintiff Terminello's tax assessment attorney to try to resolve the

4

pending tax litigation. In complete disregard for the purpose of the meeting, a representative for the Village indicated that the Village "would only discuss a comprehensive settlement, one that involved the pending tax challenge in relation to the way the Village would tax condominiums in the future." Clearly, the Village was linking the tax certiorari litigation involving 83 condominium units in return for the Village not adopting the retaliatory and punitive method for assessing condominiums.

After a brief consultation by Plaintiff with an attorney and appraisal expert, the Village was advised at that May 2005 meeting that dropping the tax challenges should not be a condition of not having a retaliatory and punitive method of assessing the condominium units undertaken by the Village. When Plaintiff Terminello and his representatives refused to link one issue with the other, the Village representatives made it clear that there was nothing further to discuss.

Accordingly, not only had the Village Assessor made it clear in July 2004 that a condition for not having a retaliatory and punitive method of assessing the condominiums would be dropping all litigation involving 83 units, but the Village Mayor and Deputy Mayor confirmed the same unlawful demand in May 2005. The fact that Defendants could not accomplish what was stated in mid-2004 until Village tax bills were sent out in June 1, 2006 was only because the required steps for the Village to enact this punitive taxation assessment method under Article 19 of the Real Property Tax Law "would be (in effect at the earliest) for the Village's 2006 roll." (See, Defendant's Motion to Dismiss, Exhibit "D", p. 1, ¶ 3 of letter to assessor Brian Kenney to the Village from John Wolham of Office of Real Property Services).

Hardly a neutral law of general applicability, Defendants' retaliatory tax assessment policy targeted Plaintiff condominium owners by selectively assessing Plaintiff condominium owners at full market value while other condominium properties within the Village (Lawrence

Park and Roundtree Condominiums) are not; by selectively depriving Plaintiff condominium owners of the assessment limitation of Real Property Law 339-y while other condominium properties within the Village are not; and, by selectively imposing unreasonable economic burdens and dramatically increased tax assessments upon Plaintiff condominium owners and not upon other condominium owners within the Village. Worst of all, the tax policy bears every mark of retaliation against Plaintiff Terminello's exercise of statutory rights to redress grievances by petition, a right that is protected by the Federal and New York Constitutions.

C.  DEFENDANT'S POLICY TO COMPEL PLAINTIFFS TO PAY FOR BASIC MUNICIPAL SERVICES THAT PLAINTIFFS DO NOT RECEIVE IS ILLEGAL

In addition to the retaliatory method of assessing certain condominium units (but not all condominium units such as the Lawrence Park and Roundtree Condominium Units), the Defendant Village unequally provides basic municipal services to those it taxes. More specifically, the Defendant Village denies Plaintiffs certain basic municipal services, but compels the Plaintiffs to pay through real estate taxes for municipal services of traditional single family homes and others. This occurs despite assessing Plaintiffs under the "sales comparison" approach.

All condominium owners (including Plaintiffs) and all other residential homeowners in the Village pay taxes for the following basic Village municipal services: (1) street sweeping; (2) snow plowing; (3) side walk and curb repairs; (4) street lighting and repairs; (5) storm drain maintenance; (6) fire hydrant water charges and maintenance; (7) street signs; and (8) street repaving and repairs. While the Defendants provided all of the foregoing services to single family home residents (and certain others), those services were not provided to the Plaintiffs as condominiums owners. Yet, Plaintiffs pay in their Village taxes for such municipal services they do not receive.

Quite simply, Plaintiffs are required by the Defendant Village to pay for municipal services only traditional single family homeowners and others enjoy. Plaintiffs are required to subsidize with Village tax payments the single family homeowners and others in this Village who receive the foregoing basic municipal services, when the Plaintiffs are denied the foregoing services. There is clearly selective and unequal treatment of the Plaintiffs in violation of applicable law.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only that the complaint itself contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint, viewing them in the light most favorable to the plaintiff and drawing all reasonable inferences in its favor. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Applying this standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). Defendants repeatedly argue throughout their papers that a lack of evidence requires dismissal. However, this is not the standard on a pre-discovery 12(b)(6) motion, which instead is dependent solely upon the allegations of the complaint. Defendants clearly have not satisfied the requisite standard and, therefore, the Motion must be denied in its entirety.

POINT II

## DEFENDANT'S POLICY OF SELECTIVELY PROVIDING BASIC MUNICIPAL SERVICES VIOLATES THE EQUAL PROTECTION CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS

In this case, Defendants selectively provided basic municipal services to a segment of its residential property owners consisting of single family homes while denying those very same services to the Plaintiff condominium owners. These basic municipal services include costs of: (1) street sweeping; (2) snow plowing; (3) side walk and curb repairs; (4) street lighting and repairs; (5) storm drain maintenance; (6) fire hydrant water charges and maintenance; (7) street signs; and (8) street repaving and repairs.[1]  Although Plaintiff condominium owners were denied these municipal services, Defendants nevertheless imposed taxes upon the Plaintiffs requiring them to pay for same. This practice resulted in the Plaintiff condominium owners paying twice for these services through property taxes in addition to fees to their association while single family home owners pay only once.

The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend XIV, § 1. New York State Constitution Article I, § 11, also provides for equal protection of the laws. As the Supreme Court has stated, the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In the Village of Piermont, how a person is treated in the context of tax assessment and services depends upon whether that person lives in a single family home or a condominium.

New York courts have long rejected treating single family homes and condominium

---

[1] Notably, shortly after the Notice of Claim was filed, the Defendant Village offered garbage pick up and recycling services to the members of the Piermont Landing HOA. Therefore, these services are not in issue at this time. Of note, Defendants include Plaintiffs documents expressly noted as settlement efforts in Defendants' motion.

structures differently when it comes to the provision of municipal services. See, Juleah Co. v. Incorporated Village of Roslyn, 56 A.D.2d 483, 392 N.Y.S.2d 926 (N.Y. App. Div. 1977). In Juleah Co., supra, the Court rejected the Defendant Village's imposition of additional charges upon an apartment complex for certain municipal services where no such charge was imposed upon single family homes.    In rendering its decision, the Appellate Division, Second Department, reasoned as follows at 56 A.D.2d at 487-88:

> [T]he practice contravenes the principle of equal protection of the law as contained in the Fourteenth Amendment to the Federal Constitution and section 11 of article I of our State Constitution. The mere fact that there is a difference between apartment dwellings and one- and two-family dwellings does not suffice to establish that the imposition of substantially different charges by a local governing body for collection of garbage on one class as against the other is a reasonable classification. As the Court of Appeals for Cuyahoga County, Ohio, pointed out in Royal Amer. Corp. v. City of Euclid (No. 34018, Aug. 21, 1975, cert. den. 425 U.S. 966, 96 S.Ct. 1751, 48 L.Ed.2d 210), when it struck down as an unconstitutional denial of equal protection of the laws an ordinance which denied public collection of garbage to apartment or condominium structures or commercial buildings, while continuing collections of garbage from one- and two-family dwellings:

> 'The classification is based upon the nature of the buildings involved, the volume of garbage produced in each, and the cost of collection of such garbage. The classification does not take cognizance of the fact that people in apartments and people in single- or two-family dwellings, produce the same type of refuse. Citizens living in both types of residences require the removal of their garbage and rubbish on a regular basis for health and safety reasons. There is no rational basis for the municipal decision not to collect garbage from inhabitants of apartments on the one hand and to collect it from inhabitants of residential dwellings on the other.'

In Applebaum v. Town of Oyster Bay, 81 N.Y.2d 733, 593 N.Y.S.2d 765 (1992), the plaintiff homeowners association sought a declaration that the tax levy for garbage collection was illegal where the association and its members did not receive those services. The lower

court found in favor of the plaintiff homeowners association.  The Defendant municipality

appealed the decision which was affirmed by the both Appellate Division and the Court of

Appeals.  In rendering its decision, the Court of Appeals reasoned at 81 N.Y.2d at 735-36:

> In the instant case, the Town of Oyster Bay does not provide and
> does not intend to provide the residential property owners with the
> benefit of garbage collection services.  We hold, therefore, that this
> ad valorem levy imposed by the Town for garbage collection
> services, where the owners do not receive the benefit of that
> service is invalid.
>
> This ruling is consistent with Landmark Colony at Oyster Bay
> Homeowners' Assn. v. Town of Oyster Bay, 145 A.D.2d 542, 536
> N.Y.S.2d 96. There, the plaintiff, a homeowner's association of a
> condominium complex, sought a judgment declaring the
> imposition of garbage collection taxes on its property invalid and
> ordering the Town to refund all the taxes paid. In order to secure
> approval for the construction of the condominium, the developer of
> the condominium complex had entered into an agreement with the
> Town Board that the condominium unit owners would be solely
> responsible for garbage collection without any obligation on the
> part of the Town of Oyster Bay. The Second Department held that
> "where * * * a plaintiff is precluded from receiving any garbage
> collection services there is no basis for the town to impose a
> garbage collection tax on its property" ( Id., at 544, 536 N.Y.S.2d
> 96).

Here, Defendants' conduct in refusing to provide Plaintiff condominium owners with

equal municipal services despite taxing them for same, based solely upon the classification of

ownership in their respective properties, violates the Federal and state constitutions.  Based upon

the foregoing, it is respectfully submitted that Defendants' motion should be denied in its

entirety. (See also, Goldman v. Fay, 8 Misc.3d 959, 797 N.Y.S.2d 731 (N.Y.City Civ. Ct. 2005)

("The fact that Article 19 of the Real Property Law excludes units in condominiums and

cooperatives violates equal protection of the law and renders the current statute

unconstitutional)."

11

POINT III

### REAL PROPERTY TAX LAW 1903 AND THE DEFENDANT'S LOCAL LAW NO. 7 OF 2005 VIOLATE THE EQUAL PROTECTION CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS AS APPLIED

It is beyond cavil that "The integrity of any system of taxation, and particularly real property taxation, rests upon the premise that similarly situated taxpayers pay the same share of the tax burden." Foss v. City of Rochester, 65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985) (citing, Johnson v. Smith, 297 N.Y. 165, 170, 77 N.E.2d 386; People ex rel. Hatch v. Reardon, 184 N.Y. 431, 445). Prior to the Defendant Village's Local Law No. 7 of 2005, which adopted Real Property Tax Law 1903, all condominium properties within the Defendant Village were valued pursuant to the income capitalization method and benefited from the assessment limitation of Real Property Law 339-y(1)(b). Here, Defendants' adoption of Real Property Tax Law 1903 created an arbitrary and invidious distinction between Plaintiff condominium owners and other condominium properties.

Within the Defendant Village, Plaintiff condominium owners, who are now assessed at full market value, have lost the benefit of the income capitalization method, lost the benefit of the assessment limitation of 339-y, and have been subjected to dramatic increases in their assessments while other condominium owners, such as those at Roundtree and Lawrence Park, have not, and are not provided a full range of municipal services. (See, Marzolla Declaration, Exhibit "A" – Minutes of Defendant Village March 28, 2006 at page 3: "Trustee Devan said that a week ago the Department of Real Property Services approved the 100% equalization rate and the legal steps the Village took to go homestead. Lawrence Park and Roundtree were apartments prior to 1983, changed to condos and by law had to stay at non-homestead.").

12

In the Defendant Village, how you are assessed depends upon whether you live in a condominium at Lawrence Park or in a condominium at Piermont Landing. In other words, the geographic location of the same exact type of property ownership determines how your Village property taxes are assessed. Plaintiff condominium owners are assessed the same as single family homes whereas "converted" condominiums such as Roundtree and Lawrence Park are artificially assessed as if a rental apartment building at a lower value. That Roundtree and Lawrence Park condominiums are taxed pursuant to Real Property Law 339-y and Real Property Tax Law 581, while Plaintiff condominium owners are not, causes a disparity between similarly situated properties based solely upon location and highlights the unconstitutionality of Defendants reliance on those laws.

In Foss, supra, the New York State Court of Appeals held that Article 19 and Rochester Local Law No. 6 of 1983 violated the equal protection clauses of the Federal and State Constitutions because they permitted similarly situated properties to be taxed unequally. In Verga v. Town of Clarkstown, 137 A.D.2d 809, 525 N.Y.S.2d 272 (1988), the Appellate Division, Second Department, held that the local law of the Defendant Town violated plaintiff condominium owners' constitutional rights reasoning at page 809 as follows:

> Under these facts, Real Property Tax Law article 19, Real Property Tax Law § 305 and Real Property Law § 339-y(1)(d) permit similarly situated properties to be taxed unequally, and there is no rational demographic basis for the difference. Accordingly, these statutes, adopted in part pursuant to Local Laws, No. 1, 1985, of the Town of Clarkstown, violate the plaintiffs' equal protection rights and are void and unconstitutional as applied (see, Foss v. City of Rochester, 65 N.Y.2d 247, 491 N.Y.S.2d 128, 480 N.E.2d 717).

Similarly, in the instant case, Real Property Tax Law Article 19 and Defendant Village's Local Law No. 7 cause Plaintiff condominium owners to be assessed in a completely arbitrary manner.

13

As in Foss, supra, and Verga, supra, there is no rationale basis for treating similarly situated property owners differently based merely upon which "side of the tracks" one purchases and/or owns a condominium.

Moreover, Defendants threatened and effectively used Article 19 as a sword to "punish" Plaintiff Terminello for his and the other 82 condominium owners 2004 and 2005 challenge of their Village assessment. Here, Defendants' application of Article 19 accomplished the goal of increased municipal revenue on the backs of the Plaintiff condominium owners while catering to and preserving assessment limitations for Roundtree and Lawrence Park condominium owners. Defendants' unequal treatment of similarly situated taxpayers violated the equal protection clauses and requires that the Defendants' Motion be denied in its entirety.

14

POINT IV

## DEFENDANTS VIOLATED PLAINTIFF CONDOMINIUM OWNERS' DUE PROCESS RIGHTS

A due process claim under 42 U.S.C. § 1983 is stated where plaintiff alleges "'an aggravated pattern of misuse of the taxing power'". 423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474, 484, 510 N.Y.S.2d 507 (1986), appeal dismissed, cert. denied, 481 U.S. 1008, 107 S.Ct. 1880, 95 L.Ed.2d 488, (quoting W.T. Grant Co. v. Srogi, 52 N.Y.2d 496, 518, 438 N.Y.S.2d 761, 420 N.E.2d 953); Corvetti v. Town of Lake Pleasant, 227 A.D.2d 821, 642 N.Y.S.2d 420 (3d Dep't 1996).

Here, the misuse of power by the Defendant taxing authority ties in to all abuses committed against the Plaintiffs by the Democrat dominated government from threatening reassessments; to threatening change of method of valuation to increase assessments; to requiring Plaintiffs to pay Village taxes that only benefit other homeowners in the Defendant Village and adequately alleges Plaintiffs were victims of selective assessment in retaliation. See, e.g., Resnick v. Town of Canaan, 38 A.D.3d 949, 832 N.Y.S.2d 102, 106 (3d Dep't 2007)(selective reassessment in retaliation for challenging former assessments states a state recognized judiciable controversy). Additionally, rather than being afforded an adequate opportunity to be heard on disputed assessments at the meetings on July 14, 2004 and May 8, 2005, Village representatives articulated a specific and direct threat against the Mr. Terminello and the Plaintiff condominium owners he represented that they would face "higher taxes," change in method of assessment, and that it "would be on [Terminello's] head."

The foregoing violates the most fundamental premise of due process, "[T]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is

to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" Bordenkircher v. Hayes, 434 U.S. 357 (1978)(citations omitted). "For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." United States v. Goodwin, 457 U.S. 368, 372 (1982). Defendants' conduct fundamentally violates due process.

Additionally, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of a potential forfeiture of their legal rights and afford them an opportunity to present their objections. See, Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865). Here, Plaintiff condominium owners demonstrated that Defendants changed methods of tax assessment from income capitalization method to comparable sales method significantly and adversely affected their respective properties and was accomplished without adequate prior notice to the owners and solely for punitive reasons. The newspaper notice and legal notice cited to by the Defendants (and presumably issued pursuant to New York Real Property Tax Law § 511) fails to advise of this change in method of assessment or any opportunity to be heard regarding same. (See, Defendants' Exhibit "I"). Indeed, the purported notice only provides that "assessor has *completed* the preliminary determination of assessed values". Id. (emphasis supplied). Likewise, the Defendant Village's Resolution of November 22, 2005 adopted in public gives no notice even of R.P.T.L. § 1903 (see Exhibit "H" to Motion to Dismiss)(compare with Local Law Filing attached which does refer to R.P.T.L. § 1903, but is dated November 23, 2005—the day after the Public Hearing).

Absent adequate notice and opportunity to be heard on the change of the method of assessment, a tax assessor serving during one term might elect the income capitalization method while the tax assessor elected for the next term might discard this method and employ the

comparable sales method and vice versa. Where this occurs, chaotic administration of the assessment and collection of property taxes and inconsistent treatment of taxpayers occurs. In such a case, when an assessor elects to unilaterally change the method of assessment, especially when the realty has only been previously assessed by a single method, the purported publication of notice of revaluation or notice of a completed revaluation will not suffice.

POINT V

## DEFENDANTS RETALIATED AGAINST PLAINTIFFS
## IN VIOLATION OF THEIR FIRST AMENDMENT RIGHTS

The Second Circuit applies an elemental test to judge whether a plaintiff has made out a prima facie claim against the defendant for retaliation against the plaintiff's exercise of First Amendment rights:

> To establish a First Amendment retaliation claim, a plaintiff must prove: (1) he/she has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right.

Jackson v. New York State, 381 F. Supp.2d 80, 89 (2005)(internal quotation marks omitted) citing Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001); Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).  Here, the verified complaint asserts that Defendants threatened Plaintiffs that unless they discontinued tax grievance challenges, that Plaintiffs "would face severe and adverse financial consequences as a result of a change of method of valuing property from the income capitalization method to the comparable sales method" as well as other consequences.  The foregoing Complaint adequately pleads civil rights violations for several reasons.

First, the actions taken by Plaintiff, Mr. Terminello (the filing of formal grievance, the tax certiorari suit, the litigation conference with Village Officials of July 2004 and May 2005) constituted conduct protected by the First Amendment.  It is undisputed that "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." Jackson, 381 F. Supp. at 89.  "Indeed, the Supreme Court has described the

18

right to petition government for redress of grievances as among the most precious of the liberties safeguarded by the Bill of Rights." Id.

Second, the Plaintiffs have alleged sufficient facts from which a retaliatory intent on the part of the Defendants reasonably may be inferred. Jackson, 381 F. Supp. at 89. Defendants' specialized tax assessment knowledge together with the timeline of events clearly establishes retaliatory intent. The difference between a hollow threat and that made by Mr. Kenney at the meeting on July 14, 2004 was that Mr. Kenney was well versed in the law and knew how to utilize same to achieve his agenda. (See, Marzolla Declaration, Exhibit "B" – February 11, 2003 letter from Brian Kenney to Lou Terminello: "Please note that this will not affect the Village of Piermont or the County assessments on these units as their valuation is already restricted by law (NYS Real Property 339-y) to valuations based not on market but on income."

For example, in 2003, Village Assessor Consultant Kenney used Real Property 339-y and its required use of the income based method of valuation as a tool to persuade Plaintiff Terminello's acceptance of a proposed 2003 tax grievance settlement. Id. Assessor Consultant Kenney later used Article 19 as a tool to carry out his threat to eliminate the protections of Real Property Law 339-y, change the method of assessment from income capitalization to the market value, and dramatically increased the Plaintiffs' assessments. Article 19 is known among the assessment community as a tool to circumvent the assessment limitations of Real Property Law 339-y and Real Property Tax Law 581 for select condominiums. (See, Marzolla Declaration, Exhibit "C" - New York State Office of Real Property Services, The Uniform Standard, Volume 5, Issue 4, dated March 2005).

Moreover, New York case law recognizes the propensity for unlawful retaliation and discrimination through the assessment of property taxes. Towne House Village Condominium v.

Assessor of Town of Islip, 200 A.D.2d 749, 607 N.Y.S.2d 87 (2d Dep't 1994). (Id., citing

Allegheny Pittsburgh Coal v. Webster County, 488 U.S. 336 (1989). ("It is clear...that [an]

increase in assessment [that] was the result of the subject property's conversion to condominium

ownership...is prohibited by [R.P.T.L. § 339-y (1)(b) and R.P.T.L. § 581].") ("Even were the

Assessor not prohibited from assigning a higher assessment due to conversion to condominium

ownership, there [is] no rational basis in law for reassessing only the subject property," because

"[s]uch a 'selective reassessment' is improper as a denial of equal protection guarantees.")

Matter of Krugman v. Board of Assessors, 141 A.D.2d 175 (2d Dep't 1988); Nordlinger v. Hahn,

505 U.S. 1 (1992). See also, Markim v. Town of Orangetown, 9 Misc. 3d. 1115(A), 2005 WL

2428359 (Rockland Co. Sup. Ct. 2005)(Unpublished, Table opinion)("[T]he constitutional

requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated

property owners."); Young v. Town of Bedford, 9 Misc.3d 1107(A), 2005 WL 2230399

(Westchester Co. Sup. Ct. 2005)(Unpublished, Table opinion)("The policy of selective

reassessment has been found by the U.S. Supreme Court and New York Courts to be a violation

of the equal protection clause of both the United States Constitution and the New York State

Constitution."). Such unlawful retaliation and discrimination, which violates the doctrine of

equal protection of the laws, is properly cast here as a response to Plaintiffs' exercise of statutory

or constitutional rights.

Third, Plaintiffs have sufficiently alleged "that [their] First Amendment rights were

actually chilled." Jackson, 381 F. Supp. at 90. In Jackson, supra, the plaintiff brought twelve

causes of action against the defendant state agents, for "refusing to intervene in an ongoing

property dispute between plaintiff and her neighbors," for neglecting to protect plaintiff from

harassment resulting from that dispute, for improperly arresting the plaintiff's son and using

excessive force to do so, and for retaliating against the complaints which plaintiff filed against

the defendants by repeatedly falsely arresting her, citing her for traffic infractions, verbally

abusing her, and using excessive force against her. The municipality took the position that

because the plaintiff had actually been able to file her suit, that there was not sufficient "chilling

effect" to hold the municipality liable. The District Court disagreed, stating at page 80.

> [T]he requirement of a chilling effect is inappropriate in the
> unusual circumstances of the present case, where the existence of
> First Amendment rights allegedly caused the person exercising
> them to be subjected to severe punishment....Indeed, the fact that
> plaintiff resisted these tactics by defendants and continued to insist
> that defendants enforce her judicial issued orders of protection
> should not constitute a free pass for alleged [municipal] conduct
> that was constitutionally deficient.

Defendants' conduct herein actually chilled Plaintiff's exercise of the right to file tax grievance

litigation after the most recent threat at the May 8, 2005 meeting.

Without regard to that actual chilling effect, however, an exception to the required

showing of "changed behavior" exists where, as here, the Plaintiffs have suffered "severe

punishment" by the exercise of the First Amendment right to petition. See, Estate of Morris v.

Dapolito, 297 F.Supp.2d 680, 693-94 (S.D.N.Y. 2004); Jackson v. New York State, 381

F.Supp.2d 80, 89 (2005); Balaber-Strauss v. Town/Vill. of Harrison, 405 F.Supp.2d 427,

433 (S.D.N.Y. 2005). In Jackson, the Court found that plaintiff was not able to show that

defendant's conduct had caused her to change her behavior when she retained the ability to

petition adverse police procedures. 381 F.Supp.2d at 90. However, the court held that "severe

punishment" of several unwarranted arrests and psychological examinations fulfilled the third

element of the retaliation test. It reasoned that a continued ability to resist tactics or insist upon

her rights should not provide a "free pass" for constitutionally deficient conduct.

The Court in <u>Dapolito</u> followed the same rationale. 297 F.Supp.2d at 693-94. When a student attempted to press charges against a teacher who had violently assaulted him, the police refused to act, falsely responded that the teacher would counter-claim, and threatened that the student would lose a college scholarship and possible future athletic career. <u>Id.</u> at 694. Here, the student could not prove a "changed behavior" because he never lost the ability to petition police. However, the court found it inappropriate to demand proof of a "chilling effect" on the student's continued rights when the student was faced with the "severe punishment" of the threat to scholarship and career.   <u>Id.</u>   It reasoned that "summary punishment for the exercise of constitutional rights is clearly a more serious infringement of those rights than a mere chilling on their continued exercise." <u>Id.</u>

In this case, although the right to petition for tax grievances still exists in theory, Plaintiff has faced severe punishment for exercising this right (e.g. an 87% tax increase). Just as the plaintiff was threatened with a counter-claim and future financial harm in <u>Dapolito</u>, Plaintiff Terminello was threatened with (and sustained) a dramatic increase in taxes as a direct result of the exercise of his rights.  His actual, objective monetary punishment rose to a high, punitive level.

22

## POINT VI

### DEFENDANTS CONSPIRED TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS

"To survive a motion to dismiss, a § 1983 conspiracy claim must allege: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Jackson, 381 F.Supp.2d at 90, citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Here, allegations include an agreement between two or more state actors (Consultant Kenney and Defendant Village) to act in concert to retaliate against Plaintiffs' exercise of First Amendment rights to petition the government by the imposition of the discriminatory tax scheme which clearly satisfy the requisite standard and require Defendants' motion be denied in its entirety.

POINT VII

SUFFICIENT ALLEGATIONS EXIST TO SUPPORT A *MONELL* CLAIM

In <u>Charles W. v. Maul</u>, 214 F.3d 350 (2d Cir. 2000), the Second Circuit addressed the

standard for a motion to dismiss under 42 U.S.C. § 1983 stating at page 357:

> To state a claim under 42 U.S.C. § 1983, McGhie must allege that
> the challenged conduct was attributable to a person acting under
> color of state law, and that such conduct deprived him of a right,
> privilege, or immunity secured by the Constitution or laws of the
> United States. As reiterated in <u>Leatherman v. Tarrant County
> Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164,
> 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a § 1983 claim is subject
> only to the notice pleading requirements of Fed.R.Civ. P. 8. That is
> to say, all it must contain is 'a short and plain statement of the
> claim showing that the pleader is entitled to relief.' Fed.R.Civ.P.
> 8(a)(2).

The complaint herein clearly satisfies the aforementioned standard in alleging that Defendants

(Mayor, Deputy Mayor and other Village representatives) are responsible for the conduct

described in the complaint under <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S.

658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because they acted at all times pursuant to official

municipal policy, practice and/or procedure. Accordingly, Defendants' motion must be denied.

24

CONCLUSION

Based upon the foregoing, it is respectfully submitted that the Defendants' motion be denied in its entirety, together with such other, further, and different relief, as the Court may seem just and proper.

Dated: South Nyack, New York
      April 15, 2008

Respectfully submitted,

FEERICK LYNCH MacCARTNEY, PLLC
Attorneys for Plaintiffs
Office and Post Office Address
96 South Broadway
Post Office Box 612
South Nyack, New York 10960
Tel: (845) 353-2000
Fax: (845) 353-2789

By: _____
      Dennis E. A. Lynch (DL 6537)

25