UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LOUIS A. TERMINELLO, MICHAEL MILLER,
PARADISE HOMEOWNERS ASSOCIATION,
HOA OF PIERMONT LANDING, REEDS &
ABBOTTSFORD GATE CONDOMINIUM,
DeVRIES POINT CONDOMINIUM, and
PARADISE HARBOR AT PIERMONT LANDING
CONDOMINIUM,

                       Plaintiffs,

        -against-

THE VILLAGE OF PIERMONT, NEW YORK
by its BOARD OF TRUSTEES AND TRUSTEES,
and "JOHN AND JANE DOES 1-10",

                    Defendants.

-----------------------------------------------------------------X

**ECF CASE**

Docket No.:
08 CV 01056 (WCC)


<u>PLAINTIFFS' MEMORANDUM OF LAW</u>
<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>
<u>CONVERTED TO A MOTION FOR SUMMARY JUDGMENT</u>


Respectfully submitted,

FEERICK LYNCH MacCARTNEY, PLLC
Attorneys for Plaintiffs
Office and Post Office Address
96 South Broadway
Post Office Box 612
South Nyack, New York 10960
Tel:  (845) 353-2000
Fax:  (845) 353-2789

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF UNDISPUTED FACTS .......................................................... 1

   1.  Local Law No. 7 of 2005 ......................................................................... 1

   2.  Real Property Tax Law §1903 .............................................................. 2

   3.  The Impact of the Foregoing Legislation as Applied ........................... 3

   4.  Selective Provision of Basic Municipal Services ................................. 4

STATEMENT OF DISPUTED FACTS ............................................................... 5

ARGUMENT ....................................................................................................... 7

  I.   LEGAL STANDARD ................................................................................ 7

  II.  THE USE OF TWO DISTINCT METHODS TO ASSESS SIMILARLY
      SITUATED RESIDENTIAL CONDOMINIUMS VIOLATES THE EQUAL
      PROTECTION CLAUSE AS A MATTER OF LAW ............................... 7

     a.  Under Local Law No. 7 Of 2005 and Real Property Tax Law §1903,
        Similarly Situated Residential Condominium Properties Are Assessed
        And Taxed Unequally ........................................................................ 9

     b.  The Resultant Classification Here Does Not Further, But Only
        Undermines, the Stated Purpose Underlying The Adoption Of
        Local Law No. 7 and Real Property Tax Law 1903 ........................... 12

  III.  THE COMPLETE ABSENCE OF DISCOVERY FROM THE
       DEFENDANTS AS TO ESSENTIAL ELEMENTS OF PLAINTIFFS'
       CLAIM REQUIRES DENIAL OF DEFENDANTS' MOTION FOR
       SUMMARY JUDGMENT IN ITS ENTIRETY ................................... 14

  IV.  EVEN ASSUMING CONSIDERATION OF DEFENDANTS' MOTION
       DESPITE THE COMPLETE ABSENCE OF DISCOVERY, MATERIAL
       QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT IN
       FAVOR OF THE DEFENDANTS ...................................................... 16

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

41 Kew Gardens Road Associates v. Tyburski,
    70 N.Y.2d 325, 520 N.Y.S.2d 544 (1987) ..................................................................... 11

Allegheny Pittsburg Coal Company v. County Commission of
    Webster County, et al,
    488 U.S. 336, 109 S.Ct. 633,
    102 L.Ed.2d 688 (1989) ..................................................................................................... 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 91 L. Ed. 2d 202,
    106 S. Ct. 2505 (1986) ...................................................................................................... 7

Burstyn v. City of Miami Beach,
    663 FSupp 528 (S.D. Fl. 1987) ....................................................................................... 13

Celotex v. Catrett,
    477 U.S. 317 (1986) .................................................................................................... 7, 16

Chertkova v.Connecticut Gen. Life Ins.,
    92 F.3d 81 (2d Cir. 1996) ............................................................................................... 17

Cleburne v. Cleburne Living Center, Inc.,
    473 U.S. 432, 105 S.Ct. 3249,
    87 L.Ed.2d 313 (1985) ............................................................................................... 8, 12

F.S. Royster Guano Co. v. Virginia,
    253 U.S. 412, 40 S.Ct. 560,
    64 L.Ed. 989 (1920) .......................................................................................................... 8

Foss v. City of Rochester,
    65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985) ..................................................................... 11

Hidden Harbour Estates, Inc. v. Norman,
    309 So.2d 180 (Fla. 4th DCA 1975) .............................................................................. 10

Manoharan v. Columbia University College of
    Physicians & Surgeons,
    842 F.2d 590 (2d Cir.1988) ............................................................................................ 17

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) .................................................................................. 7

Merchants Refrigerating Co. v. Taylor,
   275 N.Y. 113 (1937) ................................................................................ 12

New Orleans v. Dukes,
   427 U.S. 297, 96 S.Ct. 2513,
   49 L.Ed.2d 511 (1976) ............................................................................... 9

Nordlinger v. Hahn,
   505 U.S. 1, 112 S.Ct. 2326,
   120 L.Ed.2d 1 ........................................................................................ 8, 12

Plaza Hotel Associates v. Wellington Associates, Inc.,
   37 N.Y.2d 273, 372 N.Y.S.2d 35
   (N.Y. Ct. of App. (1975) ........................................................................ 11

Reed v. A.W. Lawrence & Co.,
   95 F3d 1170 (2d Cir.1996)....................................................................... 17

Ryan v. Baptiste,
   565 S.W.2d 196 (Mo.App.1978) .............................................................. 10

Schoninger v. Yardarm Beach
   Homeowners Ass'n, Inc.,
   134 A.D.2d 1, 523 N.Y.S.2d 523 (2d Dept. 1987) .................................. 10

Scotto v. Almenas,
   143 F. 3d 105, 114 (2d Cir. 1998)............................................................... 7

Verga v. Town of Clarkstown,
   137 A.D.2d 809, 525 N.Y.S.2d 272
   (2d Dept. 1988) ....................................................................................... 11

## Statutes and Other Authorities

Fed. R. Civ. P. 12(b)(6)............................................................................ 1
Fed. R. Civ. P. 56............................................................................. 1, 7, 17
Fed. R. Civ. P. 56(c) ............................................................................... 16
Fed. R. Civ. P. 56(e) ................................................................................. 7
Fed. R. Civ. P. 56(f)............................................................................... 14
NYS Real Property Law § 339-y .............................................................. 11
NYS Real Property Tax Law § 581 .......................................................... 11

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted by Plaintiffs in opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as converted by this Court's order dated July 2, 2008 to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed. These undisputed facts rest entirely on New York State statute and public record Legislative materials; public admissions, Resolutions and Minutes of the Defendants regarding the adoption of Local Law No. 7 of 2005 and the selective provision of basic municipal services and the impact of same; Plaintiffs' descriptions of the disparate impact resulting from Defendants' unequal assessment and taxation of similarly situated residential condominium properties as a result of Defendants' adoption and application of Local Law No. 7 of 2005 and Real Property Tax Law §1903; and, Plaintiffs' descriptions of the impact resulting from Defendants' selective provision of basic municipal services. It bears emphasis that these undisputed facts support summary judgment for the Plaintiffs declaring Local Law No. 7 of 2005 as unconstitutional.

### 1.    Local Law No. 7 of 2005

On November 22, 2005, pursuant to Local Law No. 7 of 2005, Defendant Village adopted Real Property Tax Law 1903. (See, Exhibit "H" as annexed to Defendants' Declaration in Support of Motion to Dismiss). At that time, Defendant Village stated the following legislative intent and purpose in passing Local Law No. 7 of 2005 adopting Real Property Tax Law 1903:

WHEREAS, the Piermont Village Board ("Village Board") is required by New York State Law to insure that all tax assessments of real property within the Village of Piermont are correct and uniform;

...WHEREAS, the Village Board feels that **adopting a uniform assessment method of all residential real property within the Village, regardless of the form of ownership of such property, is in the best interest of all residents of the Village of Piermont;**

...WHEREAS, the Village Board has complied with the legal requirements necessary to adopt the Homestead Tax Option, and **to adopt a uniform assessment method for all residential real property within the Village.** (emphasis supplied).

(See, Exhibit "H" as annexed to Defendants' declaration in support dated March 13, 2008).

## 2.    Real Property Tax Law §1903

Pursuant to Chapter 800 of the Laws of New York, 1983, the New York State Legislature amended the definition of the "homestead class" relating to the taxation of condominiums in response to a SBEA ruling Volume 7, No. 85, which interpreted Real Property Tax Law §1903 as including certain condominium structures within the definition of "homestead" while inexplicably excluding others. (See, Exhibit "A" - Memorandum in Support of Legislation by M/A Harenburg and Exhibit "B" – SBEA ruling Volume 7, No. 85 as annexed to Plaintiffs' attorney affidavit dated August 21, 2008). More particularly, the SBEA ruling in question determined that condominium structures with three or less units were within the definition of "homestead" while condominium structures with four or more units were not. Id.

The Memorandum in Support of Legislation pertaining to Real Property Tax Law §1903, New York State Session Laws Chapter 800 of 1983, from the New York Legislative Service's Governor's Bill Jacket, states the "Purpose or General Idea of Bill" underlying Real Property Tax Law 1903 is "to treat *all* condominiums residential property entitled to homestead exemptions under S-7000-B". See, Exhibit "A" - Memorandum in

Support of Legislation by M/A Harenburg as annexed to Plaintiffs' attorney affidavit dated

August 21, 2008. (emphasis supplied).

The Memorandum in Support of Legislation further states the "Effects of Present

Law which This Bill would Alter" is as follows:

> Present law by SBEA counsel differentiates between condo structures of three units and condos of four or more units, denying the latter their obviously deserved homestead class exemption. **This bill would change the definition of the homestead class to include all condominium units**, regardless of their architectural structure.

Id. (emphasis supplied).

The Memorandum in Support of Legislation further sets forth the "Justification"

underlying Real Property Tax Law 1903 as follows:

> A residence which is owner-occupied is a homestead and deserves to be classed as such, regardless of whether its walls stand on their own or are attached to other owner-occupied condominiums.
>
> The only logical basis for classifying a residence as commercial property is if it is one of four or more units which are rented out and therefore profit-producing as commercial property usually is.
>
> It was never the intention of the Legislature to distinguish between one owner occupied residence and another owner-occupied residence on the basis of their architectural structure.

Id.

### 3.    The Impact of the Foregoing Legislation as Applied

As applied here, Local Law No 7 of 2005 and Real Property Tax Law §1903

create a system where two distinct methods and rates are used to assess similarly situated

residential condominiums within the Defendant Village.  In the Defendant Village, how

you are assessed depends upon whether you live in a condominium at a building complex

called Lawrence Park or in a condominium at Plaintiff Piermont Landing.   In other

words, the location of the same exact type of property ownership determines how your Village property taxes are assessed. Plaintiff condominium owners are assessed the same as single family homes whereas "converted" condominiums such as Lawrence Park are artificially assessed as if a rental apartment building at a lower value. (See, Marzolla Declaration dated April 15, 2008 at Exhibit "A" – Minutes of Defendant Village March 28, 2006 at page 3: "Trustee Devan said that a week ago the Department of Real Property Services approved the 100% equalization rate and the legal steps the Village took to go homestead. Lawrence Park and Roundtree were apartments prior to 1983, changed to condos and by law had to stay at non-homestead.").

As a result of Local Law No. 7 of 2005 and Real Property Tax Law §1903, Plaintiff condominium owners are now assessed in the same manner as single family homes pursuant to the market value approach at the homestead rate which has caused their taxes to skyrocket. (See, Plaintiff Terminello Affidavit dated April 16, 2008 at paras. 14-15, 34 confirming resultant 87% increase in taxes). In direct contrast, the "converted" condominium owners at Lawrence Park are assessed at a much lower tax rate.

### 4.    Selective Provision of Basic Municipal Services

While Plaintiff condominium owners are taxed using the same method and rate as single family homes, they are not provided with the same basic municipal services. The Defendants selectively provided basic municipal services to a segment of its residential property owners consisting of single family homes while denying those very same services to the Plaintiff condominium owners. These basic municipal services include costs of: (1) street sweeping; (2) snow plowing; (3) side walk and curb repairs; (4) street

lighting and repairs; (5) storm drain maintenance; (6) fire hydrant water charges and maintenance; (7) street signs; and (8) street repaving and repairs.[1]  (See, Plaintiff Terminello Affidavit dated April 16, 2008 at paras. 33-38; Exhibit "A" – Defendant Village Board Meeting Minutes dated March 28, 2006 as annexed to Marzolla Declaration in Opposition dated April 15, 2008).

## STATEMENT OF DISPUTED FACTS

For a statement of disputed facts, the Court is respectfully referred to the Plaintiffs' Memorandum of Law dated April 15, 2008 at pages 1-6, the Affidavit of Louis A. Terminello dated April 15, 2008, the Declaration of Mary E. Brady Marzolla, Esq., dated April 15, 2008 together with all Exhibits annexed and referred to therein as previously submitted to the Court.

This Court should note that within the Village certain building complexes such as the Plaintiff Piermont Landing were constructed initially as condominiums.  Other building complexes within the Village were constructed as apartment buildings with rental units initially, but later "converted" into condominiums where each dwelling unit is owned by an individual person.  Thus, the Village has "as built" condominium units like the Plaintiffs' and "converted" condominium units.

The Plaintiffs dispute any claim that the classification of condominium units under Local Law No. 7 of 2005 and Real Property Law § 1903 rationally furthers a legitimate state interest in realizing a uniform assessment method of all residential new property in the Village, regardless of the form of ownership.  The classification bears no

---

[1] Notably, shortly after the Notice of Claim was filed, the Defendant Village offered garbage pick up and recycling services to the members of the Piermont Landing HOA. Therefore, these services are not in issue at this time.  Of note, Defendants include Plaintiffs' documents expressly noted as settlement efforts in Defendants' motion.  (See, Exhibit "M" as annexed to Defendants' Declaration in Support dated March 13, 2008).

rational relation to the stated purpose of the legislation. The classification results in an arbitrary, invidious, and disparate allocation of the tax burden among similarly situated residential condominiums. The classification was created in retaliation to Plaintiffs' filing and pursuit of tax challenges to chill the exercise of their grievance rights.

<u>**ARGUMENT**</u>

## I.     <u>LEGAL STANDARD</u>

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact…" Fed. R. Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). <u>Anderson</u>, 477 U.S. at 248.

In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." <u>Scotto v. Almenas</u>, 143 F. 3d 105, 114 (2d Cir. 1998). Applying this standard here, it is respectfully submitted that the Defendants' motion be denied in its entirety.

## II.     <u>THE USE OF TWO DISTINCT METHODS TO ASSESS SIMILARLY SITUATED RESIDENTIAL CONDOMINIUMS VIOLATES THE EQUAL PROTECTION CLAUSE AS A MATTER OF LAW</u>

The Equal Protection Clause of the 14th Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The right

to equal protection under the laws is further protected by the New York State Constitution, which provides that "no person shall be denied equal protection of the laws of this state or any subdivision thereof." Under the Equal Protection Clause, "the fairness of one's allocable share of the total tax burden can only be meaningful evaluated by comparison with the share of others similarly situated relative to their property holdings." Allegheny Pittsburg Coal Company v. County Commission of Webster County, et al, 488 U.S. 336, 346, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)(striking down differential real-estate tax scheme).

As applied here, Local Law No 7 of 2005 and Real Property Tax Law §1903 create a system where two distinct methods and rates are used to assess similarly situated residential condominiums resulting in an arbitrary, invidious, and disparate allocation of the tax burden that is contrary to the express intention of the respective legislative bodies passing these laws.

While "[t]he Equal Protection Clause does not forbid classifications", it does "keep[] governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (citing, F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Id., 505 U.S. at 10 (citing, Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-441, 105 S.Ct. 3249, 3254-3255, 87 L.Ed.2d 313 (1985); New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513,

2517, 49 L.Ed.2d 511 (1976)).  Employing this standard here requires that Local Law No. 7 of 2005 and Real Property Tax Law §1903 be declared unconstitutional as applied.

    **a.**  **Under Local Law No. 7 Of 2005 and Real Property Tax Law §1903, Similarly Situated Residential Condominium Properties Are Assessed And Taxed Unequally**

Defendants' Local Law No. 7 of 2005, which adopts Real Property Tax Law 1903, violates the Equal Protection Clauses of the Federal and State Constitutions as applied because same creates arbitrary classifications which permit the Defendant Village to assess and tax similarly situated residential condominium properties differently.  That the residential condominiums at issue are in all relevant respects alike, similarly situated and functionally indistinguishable in every way other than the applicable method and rate of assessment is indisputable.  Both Plaintiffs' as-built condominiums and the converted condominiums in the Village like Lawrence Park are attached, multi-unit complexes consisting of individually owned units with jointly owned common elements, such as roofs, walkways, stairways, and exterior walls, etc, ruled by by-laws, a homeowner's association, and Board of Managers.   In both the as-built condominiums and the converted condominiums, the individual units contribute towards common charges on a monthly basis to finance the maintenance and repair of the common elements.

Moreover, the form of the condominium ownership in both as-built and converted condominiums is exactly the same; the creation and administration of both are governed by the provisions of N.Y. Real Prop. Law Article 9-B; the administration of both is pursuant to "by-laws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units

and the condominium's common elements" (<u>Schoninger v. Yardarm Beach Homeowners Ass'n, Inc.</u>, 134 A.D.2d 1, 523 N.Y.S.2d 523 (2d Dept. 1987)); both are subject to the jurisdiction of the Condominium Act by the filing of a declaration (Real Property Law 9-B); and, the owners of the individual units receive a deed (Real Property Law 9-B).

Both as-built and converted condominium owners are also subject to identical limitations of individual rights as compared to single family home owners:

> Because of the manner in which ownership in a condominium is structured, the individual unit owner, in choosing to purchase the unit, must give up certain of the rights and privileges which traditionally attend fee ownership of real property and agree to subordinate them to the group's interest.  As one court has commented, "to promote the health, happiness, and peace of mind of the majority of the unit owners * * * each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property" (*Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180, 182 [Fla. 4th DCA 1975]; *see also, Ryan v. Baptiste,* 565 S.W.2d 196 [Mo.App.1978] ).

<u>Schoninger v. Yardarm Beach Homeowners Ass'n, Inc.</u>, 134 A.D.2d 1, 523 N.Y.S.2d 523 (2d Dept. 1987).

In the Defendant Village, as-built condominiums and converted condominiums are treated equally when it comes to municipal services in that <u>neither</u> are provided with street sweeping, snow plowing, side walk repairs, curb repairs, street lighting, street repairs, storm drain maintenance, fire hydrant water charges and maintenance, street signs, and street repaving and repairs.[2]

Nevertheless, pursuant to Local Law No. 7 and Real Property Tax Law §1903, condominium unit owners located in Lawrence Park Condominiums and Roundtree Condominiums within the Defendant Village continue to enjoy and benefit from the

---

[2] <u>Compare,</u> Defendant Village treatment of Plaintiff condominium owners as equal with single family homes <u>solely</u> for taxation purposes.  Indeed, it is undisputed that Defendant Village's fails to provide the same essential municipal services to all within the "homestead" class and instead provides select services only to single family homes and not to Plaintiff condominium owners.  (<u>See,</u> Affidavit of Terminello dated April 15 at paras. 33-38).

"income method" of real property tax assessment while Plaintiff condominium owners located elsewhere within the Defendant Village are now assessed via the less favorable "market sales" method.[3]  In other words, if Plaintiff Terminello's condominium unit was located in Lawrence Park rather than Paradise Harbor, he too would continue to benefit from the income method of assessment.  However, solely because his unit is located in Paradise Harbor, Plaintiff Terminello's condominium unit is assessed pursuant to the market sales method which has resulted in an 87% increase in taxes since Local Law No. 7 was adopted.  (See, Affidavit of Terminello dated April 15, 2008 at paras. 14-15, 34).

Such application of the tax laws is unconstitutional because it imposes disparate taxation on similarly-situated properties based on nothing more than arbitrary distinctions.  Foss v. City of Rochester, 65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985); Verga v. Town of Clarkstown, 137 A.D.2d 809, 525 N.Y.S.2d 272 (2d Dept. 1988), app. dismissed, 74 N.Y.2d 842, 546 N.Y.S.2d 558 (1989).  Indeed, the arbitrary, invidious and unequal treatment between as-built and converted condominiums created by Defendant Village's adoption of Local Law No. 7 of 2005 and Real Property Tax Law §1903 is not based upon "pertinent and real differences" but on "irrelevant and artificial ones" and

---

[3] Under the "income method" of valuation the premises benefit from the assessment limitations of NYS Real property Law § 339-y and NYS Real Property Tax Law § 581 which "places a ceiling on the aggregate value of the assessments of the units and require assessors to value a condominium complex as a single entity to determine that ceiling.  This ceiling provides a built-in assessment cap, if you will, for all condominiums, which means they are receiving what amounts to an exemption for merely having a particular style of ownership."  See, Exhibit "C" – The Uniform Standard, NYS Office of Real Property Services, page 1 as annexed to the Plaintiffs' Declaration in Opposition of Mary E. Brady Marzolla dated April 15, 2008; see, also, Exhibit "B" – letter from Brian Kenney dated February 11, 2003 confirming assessment of Plaintiffs' units "already restricted by law (NYS Real Property § 339-y) to valuations based not on market but on income" as annexed to Plaintiffs' Declaration in Opposition of Mary E. Brady Marzolla dated April 15, 2008.  The "income method" is based upon income and expense data.  See, 41 Kew Gardens Road Associates v. Tyburski, 70 N.Y.2d 325, 331, 520 N.Y.S.2d 544 (1987).  In comparison, the "market sales" approach is based upon recent arm's length sales of comparable properties.  See, e.g., Plaza Hotel Associates v. Wellington Associates, Inc., 37 N.Y.2d 273, 372 N.Y.S.2d 35 (N.Y. Ct. of App. (1975).

therefore must be rejected.  See, Merchants Refrigerating Co. v. Taylor, 275 N.Y. 113, 121-22 (1937).

b. **The Resultant Classification Here Does Not Further, But Only Undermines, the Stated Purpose Underlying The Adoption Of Local Law No. 7 and Real Property Tax Law 1903**

Under the equal protection analysis, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985); Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1, 13 (1992).

Here, the classification bears absolutely no rational relation to the stated purpose underlying the Defendant Village's adoption of Local Law No. 7.  Instead, the resultant classification is completely contrary to and disconnected from the Defendant Board's express legislative purpose of "**adopting a uniform assessment method of all residential real property within the Village, regardless of the form of ownership**" in its November 22, 2005 resolution adopting same.  (See, Exhibit "H" as annexed to Defendants' declaration in support dated March 13, 2008)(emphasis supplied).  Even assuming, arguendo, that the stated governmental purpose is a legitimate one, same is only undermined, not served, by perpetuating two different methods of assessment of similarly situated residential condominium owners within the Defendant Village.

Likewise, the stated "purpose or general idea of the bill" underlying Real Property Tax Law 1903 is "to treat _**all**_ condominiums residential property entitled to homestead exemptions under S-7000-B".  See, Exhibit "A" - Memorandum in Support of Legislation by M/A Harenburg. (emphasis supplied).  Most notably, the Memorandum in Support states

"[t]his bill would change the definition of the homestead class to include all condominium units...", which it certainly does not do. Id. "Justification" for the amendment to Real Property Tax Law 1903 is further stated as follows:

> **A residence which is owner-occupied is a homestead and deserves to be classed as such, regardless of whether its walls stand on their own or are attached to other owner-occupied condominiums.**
>
> The only logical basis for classifying a residence as commercial property is if it is one of four or more units which are rented out and therefore profit-producing as commercial property usually is.
>
> **It was never the intention of the Legislature to distinguish between one owner occupied residence and another owner-occupied residence on the basis of their architectural structure.**

Id. (emphasis supplied).

As evidenced by the plain language of the Board and the legislature, Local Law No. 7 nor Real Property Tax Law §1903 was intended to equate treatment of *all* residential properties. Instead, the resultant Legislation has had the opposite effect of that intended by creating arbitrary classification between as-built and converted residential condominiums. This result is completely contrary to the express intention of the Defendant Village Board in adopting Local Law No. 7 and the New York State Legislature in adopting the amendment to Real Property Tax Law §1903.

"Reiterating Cleburne, when the effect of an ordinance is greatly attenuated, it cannot be found to be rationally related to the stated goal". Burstyn v. City of Miami Beach, 663 FSupp 528 (S.D. Fl. 1987). Here, the challenged classification achieves an impact which is exactly the opposite of the stated purposes underlying both Local Law No. 7 and Real Property Tax Law 1903. Rather than equalize all residential housing, including condominiums, the laws herein needlessly and arbitrarily create a new

classification between functionally indistinguishable properties.  Indeed, there is absolutely no legitimate reason to create a classification amongst residential condominiums which, as previously demonstrated, are in all relevant respects identical. Based upon the foregoing, Local Law No. 7 of 2005 and Real Property Tax Law §1903 must be declared unconstitutional as applied under both the New York State and Federal Constitutions because the classification created bears no relationship to the achievement of a legitimate purpose and Defendants' motion must be denied in its entirety.

**III.     THE COMPLETE ABSENCE OF DISCOVERY FROM THE DEFENDANTS AS TO ESSENTIAL ELEMENTS OF PLAINTIFFS' CLAIM REQUIRES DENIAL OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY**

Due to the current procedural posture of Defendants' pre-answer motion to dismiss, Plaintiffs have not yet had the opportunity to obtain any discovery or question the Defendants regarding any of the elements of the causes of action or the anticipated usual municipal defenses.  *See*, Fed. R. Civ. P. 56(f).  As further explained in the accompanying Attorney Affidavit, the following are examples of facts which are necessary and can be obtained via document discovery and party and non-party depositions:  (a) facts and circumstances regarding July 16, 2004 and May 8, 2005 meetings where the Village's Consultant Assessor threatened to change the method of taxing condominiums in the Village from the income approach to the market sales if Plaintiff Terminello did not drop the tax challenges on behalf of the Plaintiff condominium owners; (b) all facts and circumstances regarding the Village's Consultant Assessor's conversation with Evelyn Picardi, resident of Paradise Harbor at Piermont Landing Condominium in or about January 2006; (c) all facts, circumstances, conversations, memoranda, e-mail, instant messages, correspondence and notes regarding

the actual intention underlying the Village and the Village's Consultant Assessor threat against the Plaintiff condominium owners as articulated at the July 16, 2004 and May 8, 2005 meetings; (d) all facts, circumstances, conversations, memoranda, e-mail, instant messages, correspondence, resolutions, and policies, and notes regarding the steps taken by the Village and the Village's Consultant assessor to carry out the threat against the Plaintiff condominium owners as articulated at the July 16, 2004 and May 8, 2005 meetings; (e) all facts, circumstances, conversations, memoranda, e-mail, instant messages, correspondence and notes regarding the Village's adoption of Local Law No. 7 of 2005 and the background thereof; (f) all facts, circumstances, conversations, memoranda, e-mail, instant messages, correspondence, policies, and notes regarding the activities and use of Village police to silence and chill Plaintiff Terminello's attempt to run for mayor by way of removal of his campaign signs; (g) all facts and circumstances surrounding Defendants' aggravated pattern of misuse of the taxing power to retaliate against Plaintiffs for merely exercising their Constitutional rights to Free Speech and to petition the courts; (h) all facts, circumstances, training, education, and policies surrounding methods and rates of taxation; and, (i) all facts, circumstances, and policies surrounding the provision of municipal services to Village residents of any kind of ownership. Due to Defendants' pre-answer motion and the current procedural posture of the case, Plaintiffs have not yet been able to seek nor obtain such discovery.

Based upon the foregoing, the Defendants' converted motion for summary judgment must be denied in all respects. Rather, this Court is invited to search the record and grant Summary Judgment to Plaintiffs declaring Local Law No. 7 of 2005 unconstitutional.

## IV.    EVEN ASSUMING CONSIDERATION OF DEFENDANTS' MOTION DESPITE THE COMPLETE ABSENCE OF DISCOVERY, MATERIAL QUESTIONS OF FACT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS

In this case, Defendants clearly have failed to meet their initial burden of demonstrating the absence of a disputed issue of material fact as required under Fed. R. Civ. P. 56(c). See also, Celotex v. Catrett, 477 U.S. 317, 323 (1986). The Defendants' initial moving papers dated March 13, 2008 annexed and relied upon a seven paragraph affidavit from Village Consultant Assessor, Brian Kenney, together with several exhibits.[4] That bare boned Affidavit is clearly insufficient to support a motion for summary judgment and does not dispute the substantial allegations in the complaint (1) that Defendants threatened to change the method of taxation of the Plaintiff condominium owners from the income method to the comparable sales method if Plaintiffs did not discontinue their tax challenges; the method of taxation of the Plaintiff condominium owners was changed from the income method to the comparable sales method in retaliation to their tax challenges; (2) that the Plaintiff condominium owners have been adversely and selectively impacted by the Defendants' change of the method of taxation of the Plaintiff condominium owners from the income method to the comparable sales method in violation of their rights to equal protection; (3) that Defendants applied their tax laws and burden unequally; while now taxing Plaintiff condominium owners in the same manner as single family homes, Defendants fail to provide Plaintiff condominium owners the same basic municipal services provided to single family home owners; (4) that Defendants' intention underlying the aforesaid conduct is to chill Plaintiffs' from filing and continuing to pursue tax challenges;

---

[4] Although Mr. Kenney's affidavit refers to a September 30, 2004 memo to the Board of Trustees as Exhibit "1" annexed thereto, this memo was not annexed to the papers received from Defendants nor did same appear on the PACER system when this firm attempted to obtain the exhibit and appears to have been omitted from Defendants' initial submission.

and, (5) that all of the aforesaid conduct was undertaken pursuant to municipal policy.

Moreover, Defendants' submissions clearly confirm the close temporal proximity from the date of the retaliatory threat on July 16, 2004 to change the method of assessment from the income approach to the market sales approach and the Village Consultant Assessor's affirmative steps and recommendation in the fall of 2004 towards that ultimate end.  (Compare, Plaintiff Terminello Affidavit dated April 15, 2008 at paras.11-12 with Affidavit of Brian Kenney at paras. 3-4 dated March 4, 2008 as submitted by the Defendants).  It is well settled that causal connection needed for proof of a retaliation claim "'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.' " Reed v. A.W. Lawrence & Co., 95 F3d 1170, 1178 (2d Cir.1996) (quoting Manoha ran v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir.1988)); see also, Chertkova v. Connecticut Gen. Life Ins., 92 F.3d 81, 87 (2d Cir. 1996)(recognizing that circumstantial evidence is often the only available means to prove retaliation claims).

Even assuming, arguendo, Defendants' burden had been met (which is manifested and materially disputed by Plaintiffs), Plaintiffs have presented "specific facts showing that there is a genuine issue for trial" as evidenced by Mr. Terminello's Affidavit of April 15, 2008 together with exhibits consisting of Defendants' own admissions which requires Defendants' motion be denied in its entirety.  See, Fed. R. Civ. P. 56(e).

## CONCLUSION

Based upon the foregoing, together with Plaintiffs' prior submissions, it is respectfully submitted that the Defendants' motion be denied in its entirety, together with such other, further, and different relief, as the Court may seem just and proper.

Dated: South Nyack, New York
       August 21, 2008

                          Respectfully submitted,

                          FEERICK LYNCH MacCARTNEY, PLLC
                          Attorneys for Plaintiffs
                          Office and Post Office Address
                          96 South Broadway
                          Post Office Box 612
                          South Nyack, New York 10960
                          Tel:  (845) 353-2000
                          Fax: (845) 353-2789

           By:       /s/DENNIS E.A. LYNCH
                          Dennis E. A. Lynch (DL 6537)